USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _3/24/2025_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIELLE DREYER,

                              Plaintiff,

-against-

UNITED STATES DEPARTMENT OF
JUSTICE, Pamela Bondi, *as Attorney General
of the U.S. Department of Justice*, UNITED
STATES DRUG ENFORCEMENT
ADMINISTRATION, and ANNE
MILGRAM, *as Administrator of the United
States Drug Enforcement Administration
Defendants*,

                              Defendants.

1:23-cv-09407-MKV

**ORDER GRANTING MOTION TO
DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff, Danielle Dreyer, brings this action against the United States Department of Justice (the "DOJ"), the United States Drug Enforcement Administration (the "DEA"), Pamela Bondi,[1] as Attorney General of the United States, and Anne Milgram, as Administrator of the DEA. Dreyer raises claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York Human Rights Law ("NYSHRL"), the Civil Service Reform Act of 1978 ("CSRA"), and the Whistleblower Protection Act ("WPA"). [ECF No. 27] ("Second Amended Complaint" or "SAC"). Defendants move to dismiss the case or, in the alternative, for summary judgment. [ECF No. 42]. For the reasons set forth below, the motion to dismiss is GRANTED.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Attorney General Pamela Bondi is automatically substituted for former Attorney General Merrick B. Garland as Defendant.

## FACTUAL BACKGROUND[2]

Danielle Dreyer was employed by the DEA for over a decade before she was terminated in 2023. SAC ¶¶ 21, 93. In September 2017, she was directed by her supervisor Mr. Aaron Koger to accompany him to attend a case-related meeting in Cartagena, Colombia (the "Cartagena trip"). SAC ¶ 22. While in Cartagena, Plaintiff was invited to the home of Jose Irizarry, a DEA employee stationed at the Cartagena DEA office. SAC ¶¶ 23, 24. Several other DEA and law enforcement officers were also invited to the event at Irizarry's home. SAC ¶¶ 23. At Irizarry's home, Plaintiff Irizarry and his wife made attempts to sexually seduce Plaintiff, making sexual suggestions and innuendo. SAC ¶ 25. Irizarry's wife also gave Dreyer a blue pill that Dreyer did not ingest. SAC ¶¶ 26–27.

That night Dreyer entered the pool and hot tub at Irizarry's house topless and wearing only underwear. SAC ¶ 27. Other people entered the pool and hot tub nude as well. SAC ¶ 28. While in the hot tub Dreyer consensually kissed and embraced a woman who was a federal prosecutor and expressed her own lactating breast. SAC ¶¶ 28–29. The next day Dreyer attended another event hosted by Irizarry and his wife on his boat and received another blue pill from Irizarry which she did not ingest. SAC ¶¶ 30-33. Plaintiff left Cartagena soon thereafter. SAC ¶ 42.

Several years later, the FBI began investigating Irizarry and his wife and arrested them for drug trafficking and laundering money (the "Irizarry Investigation"). SAC ¶¶ 44–45. They both plead guilty and began cooperating with the DOJ and DEA. SAC ¶ 47. On January 25, 2022 Plaintiff was ordered to appear at "HQ" and was questioned by Inspector Uhl of the Office of Professional Responsibility ("OPR") regarding the Cartagena trip. SAC ¶¶ 51–52. During the questioning, OPR Inspector Uhl yelled at Plaintiff, attacked Plaintiff's character, integrity, sexual

---

[2] The facts as stated herein are drawn from Plaintiff's Second Amended Complaint and for purposes of this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

orientation, and gender. SAC ¶ 54. He, in front of others, ridiculed, demeaned, and embarrassed Plaintiff about her bisexual conduct with former the female federal prosecutor at Irizarry's house and her lactating breasts. *Id.* Other government employees who had been attendees at Irizarry's events during the Cartagena trip were interviewed but were not required to appear at HQ or harassed and ridiculed. SAC ¶ 55.

In February 2022, Plaintiff again was contacted by an OPR inspector who alleged that she misplaced three cell phones and a fitness type band/watch which were evidence in a three-year-old case that she had investigated. SAC ¶¶ 57–59. Plaintiff's acting supervisor told her to forge a federal prosecutor's signature on a form accounting for the evidence and she refused. SAC ¶¶ 62, 65–66.

In April 2022, the DEA put Dreyer on administrative leave for ten days, revoked her security clearance. confiscated her gun, badge and identification, and prohibited her from entering the DEA office without an escort and an official duty order to enter. SAC ¶ 71. Dreyer was told that she was put on leave due to allegations made against her during the Irizarry Investigation and her actions during the Cartagena trip. *Id.* Nearing the end of her ten days of leave, Dreyer's supervisor told her to "stay home till next step." SAC ¶¶ 72, 73. A few days later, the DEA confiscated Dreyer's government vehicle and office parking pass. SAC ¶ 74. Throughout May and June 2022, Dreyer was prohibited from returning to work. SAC ¶¶ 75, 76. By July, Plaintiff received a memo notifying her that she was indefinitely suspended without pay. SAC ¶ 76.

Dreyer first contacted the DEA Equal Employment Opportunity ("EEO") officer regarding her complaints in June 2022. SAC ¶ 13. In July 2022, the EEO officer initially interviewed Dreyer and the DEA issued a memo notifying Dreyer of an indefinite suspension without pay. SAC ¶ 13–14. On August 2, 2022, Dreyer filed an EEO complaint alleging workplace discrimination and other prohibited personnel practices. SAC ¶¶ 15, 77. Specifically, the complaint alleged that the

DEA discriminated against her on the basis of sex and sexual orientation through the following actions: the DEA pretextually accused Dreyer of misplacing evidence in an investigation; a supervisor instructed Dreyer to forge an AUSA's signature regarding that missing evidence; several DEA employees "ridiculed, harassed, demeaned, and embarrassed" her during an interview at HQ regarding the Cartagena trip; the DEA suspended Dreyer's security clearance; and indefinitely suspended her without pay and without a hearing. Osmond Decl. Ex. D ("EEO Complaint").[3] Plaintiff alleges that she was treated disparately based on her sexual orientation because other DEA employees who had attended the parties thrown on the Cartagena trip were not harassed or ridiculed, required to appear in HQ, or punished in any way. *Id.*

Thereafter, Plaintiff received an official mandatory drug screening notice that she was randomly selected to appear at the office from which she was banned. SAC ¶ 78. Dreyer notified her supervisor of the date and time she planned to appear for the drug test and the supervisor replied "go for it." SAC ¶¶ 80–81. Dreyer met her "supervisory escort," Sara Dunlea, at the office and Ms. Dunlea escorted Dreyer into and out of the office to facilitate the drug test. SAC ¶ 83. On or about the same date as the drug test, Dreyer learned that DEA Headquarters Counsel advised the New York office that "it won't be good for our case if she passes her drug test.'" SAC ¶ 84. Special Agent in Charge ("SAC") Frank Tarentino also asked the OPR to find that Dreyer and her escort Dunlea had committed misconduct, but was rebuffed. SAC ¶ 85.

On April 26, 2023, Plaintiff received a Deciding Official's Decision Letter of Removal notifying her of her termination. SAC ¶ 93; Osmond Decl. Ex. H. ("Letter of Removal")]. The Letter of Removal terminated Dreyer based on her actions during the Cartagena trip and other allegations related to the Irizarry Investigation. SAC ¶ 93. On May 16, 2023, Plaintiff filed a

---

[3] As explained further below, the Court may consider this and other documents in the administrative record without converting the present motion to dismiss into a motion for summary judgment.

complaint with the U.S. Merit Systems Protection Board ("MSPB"), which she later voluntarily

dismissed.  SAC ¶¶ 20, 94.

On September 8, 2023, Dreyer received a Final Agency Decision and a Right to File in

U.S. District Court from the DOJ.  SAC ¶ 95; Osmond Decl. Ex. K ("Final Agency Decision"),

Ex. L ("Notice of Right to File"). The Final Agency Decision separated Dreyer's complaints into

four "claims":

> 1.      On January 25, 2022, during an Office of Professional
> Responsibility (OPR) interview regarding allegations of misconduct
> involving a former DEA employee assigned to Cartagena,
> Colombia, who was under criminal indictment, DEA OPR
> investigators yelled at, demeaned, ridiculed, and verbally attacked
> complainant regarding their character, integrity, sexual orientation,
> and gender;
>
> 2.      On April 15, 2022, DEA management officials suspended
> complainant's security clearance;
>
> 3.      On July 19, 2022, DEA management officials placed
> complainant on indefinite suspension without pay.  Complainant
> proffered comparators, contending that other employees whom OPR
> interviewed were not subjected to retaliation, penalized, punished,
> or had their security clearances suspended; and
>
> 4.      Around August 23, 2022, DEA officials began to interfere in
> pending litigation and an ongoing official administrative proceeding
> that involves complainant.

Final Agency Decision at 2.  The DOJ found that the record did not support Dreyer's claims that

DEA officials subjected her to "a hostile work environment or [that DEA officials] indefinitely

suspended [her] employment status on the basis of [her] sex, sexual orientation, or engagement in

EEO activity."  Notice of Right to File at 1.  The Notice of Right to File stated that Dreyer had the

right to appeal her "indefinite suspension" or "constructive discharge claim" to MSPB or file a

civil action regarding that claim in United States District Court within thirty days of the receipt of

the Final Agency Decision.  *Id.* at 1–2.  The Final Agency Decision stated that "[a]s to all other

claims in [Dreyer's] complaint," specifically "claims one, two and four", Dreyer had the right to either (a) appeal them to the Equal Employment Opportunity Commission's ("EEOC") Office of Federal Operations or (b) file a civil action in a United States District Court within ninety days of the receipt of the Final Agency Decision. *Id.* at 2–3. Forty-Seven days after Dreyer received the Final Agency Decision, on October 25, 2023, Plaintiff filed this civil suit. SAC ¶ 97; [ECF No. 1].

## **PROCEDURAL HISTORY**

Plaintiff initiated this action by filing a Complaint, [ECF No. 1], and shortly thereafter, Plaintiff filed an Amended Complaint. [ECF No. 17 ("Amended Complaint" or "FAC")]. With leave of the Court, Plaintiff filed a Second Amended Complaint, in response to the issues raised in Defendants' pre-motion letter seeking leave to move to dismiss the case. [ECF Nos. 34, 36, 37]. The SAC asserts twelve claims:

- Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") (Count One), and of the Human Rights Law, N.Y. Exec. L Ch. 18., Art. 15 § 290 et seq. ("NYSHRL") (Count Two) alleging discrimination based on sexual orientation,

- Violation of Title VII (Count Three) and NYSHRL (Count Four) alleging discrimination based on sex,

- Violation of Title VII (Count Five) alleging retaliation,

- Violations of the Civil Service Reform Act of 1978 ("CSRA") and the Whistleblower Protection Act based on removal, 5 U.S.C. § 2302(b)(1)(A) (Count Six), based on obstruction of right to employment, 5 U.S.C. § 2302(b)(4)  (Count Seven), based on a personnel action against employee for exercising a legal right to file an EEO claim, 5 U.S.C. § 2302(b)(9)(A) (Count Eight), based on a personnel action against a third party testifying or assisting an employee exercise a legal right or claim, 5 U.S.C. § 2302(b)(9)(B)

(Count Nine), based on a personnel action against an employee for refusing to obey an order that would require the individual to violate a law, rule or regulation, 5 U.S.C. §2302(b)(9)(D) (Count Ten), and based on discrimination against an employee for conduct which does not adversely affect the performance of the employee or others, 5 U.S.C. §2302(b)(10) (Count Eleven and together with Counts Six through Ten, (the "CSRA/WPA Claims")), and

- Violation of Title VII (Count Twelve) alleging discrimination based on sex or sexual orientation.

Shortly thereafter Defendants moved to dismiss the Second Amended Complain, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and in the alternative moved for summary judgment, filing a memorandum of law, [ECF Nos. 42, 43 ("Def. Mem.")], and a declaration in support which attached several exhibits. [ECF No. 44 ("Osmond Decl.")]. Plaintiff filed a memorandum of law in opposition, which also attached several exhibits and a declaration. [ECF Nos. 47 ("Pl. Opp."), 48–49]. Defendants filed a reply. [ECF No. 51 ("Def. Reply")]. Plaintiff also filed a motion to deny defendant's motion for summary judgment without prejudice or in the alternative defer Defendant's motion and allow time for discovery. [ECF No. 50 ("Pl. Mot.")].

## LEGAL STANDARD

### I.  Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a claim must be dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 712 (2d Cir. 2019) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). A district court resolving a motion

to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (alteration and internal quotation marks omitted).

## II.        Failure to State a Claim Under Rule 12(b)(6)

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Thus, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Although the plausibility standard is "not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In deciding a motion to dismiss under Rule 12(b)(6), a court must accept factual allegations as true and construe all reasonable inferences in the plaintiff's favor. *See Iqbal*, 556 U.S. at 678; *Watson Lab'ys, Inc.*, 101 F.4th 223, 235 (2d Cir. 2024).  The Court, however, does not accept as true "legal conclusions" contained in a complaint. *Iqbal*, 556 U.S. 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim upon which relief can be granted. *Id.*

## DISCUSSION

I.     **The Court May Consider Documents**
       **Outside of the Pleadings**

Throughout the Second Amended Complaint, Dreyer references several documents relevant to the exhaustion of administrative procedures.  *See* SAC, [ECF No. 33].  Dreyer also attached several documents to her opposition to the motion to dismiss.  *See* Pl. Opp.  Defendants also attached several documents to a declaration filed in support of its motion to dismiss.  *See* Osmond Decl.  Defendants argue that the documents appended to the Osmond Declaration, "are directly referenced by or integral to the Second Amended Complaint and are all part of the administrative records relating to Plaintiff's underlying Equal Employment Opportunity and/or Merit Systems Protection Board proceeding" and as such, "may be considered on a motion to dismiss under Rule 12(b)(1) or Rule 12(b)(6)."  Def. Mem. at 3 n.1.  Defendants move, in the alternative, to convert its motion to one for summary judgment so that the Court may consider these documents.  *Id.* Plaintiff opposes summary judgment and has moved in a separate motion to deny or defer summary judgment to allow for discovery.  [ECF No. 50].

"[S]ummary judgment motions prior to discovery are disfavored."  *See, e.g.*, *Bareby v. Union Mut. Fire Ins. Co.*, No. 22-CV-6034 (JGK), 2023 WL 1818674, at *3 (S.D.N.Y. Feb. 8, 2023) (quoting *Houlahan v. Raptor Trading Sys., Inc.*, No. 16-cv-9620, 2018 WL 3231662, at *5 (S.D.N.Y. Feb. 12, 2018)).  Here, because discovery has not yet begun, "the better course is to allow the parties to conduct discovery and file any motions for summary judgment at the appropriate time."  *Bareby*, 2023 WL 1818674, at *3 (citing *Wajilam Exports (Singapore) Pte. Ltd. V. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006) ("There would be little point in considering a summary judgment motion when significant relevant facts may yet be

discovered.").  As such, the Court declines to convert Defendants' motion to dismiss the Second Amended Complaint into a motion for summary judgment.

Nevertheless, the Court considers a few of the documents filed on the docket by the parties. The Court need not convert the pending motion to dismiss to a motion for summary judgment to consider these documents for several reasons.  First, in assessing the portions of the pending motion to dismiss that move pursuant to Rule 12(b)(1), the Court may consider evidence outside of the pleadings. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 417 (2d. Cir. 2015) (quoting *Makarova*, 201 F.3d at 113) ("In deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint.").

Second, regarding the portions of Defendants' motion based on Rule 12(b)(6), the Second Amended Complaint is "deemed to include" documents incorporated by reference and documents that are "integral" to the complaint because it relies heavily on their terms and effect.  *See, e.g.*, *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006); *Rothman v. Gregor,* 220 F.3d 81, 88–89 (2d Cir. 2000).  "[A] plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  Applying this standard, District Courts in this Circuit have regularly held that "[w]here [the] exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of the records and reports of the relevant administrative bodies, as well as the facts set forth therein" on a Rule 12(b)(6) motion. *See Levinson v. United States Fed. Bureau of Prisons, Metro. Corr. Ctr. – New York*, 594 F. Supp. 3d 559, 566–67 (S.D.N.Y. 2022) (quoting *Wickes v. Westfair Elec. Co.*, 2021 WL 217318, at *3 n.4 (S.D.N.Y. Jan. 20, 2021) and quoting *Chidume v. Greenburgh-N. Castle Union Free Sch. Dist.*, 2020 WL 2131771, at *2 (S.D.N.Y. May 4, 2020)).

Here, exhaustion of administrative remedies is a pre-requisite to Plaintiff bringing her claims in this action. *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015) ("It is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court."); *Chinniah v. FERC*, 62 F.4th 700, 702 (2d Cir. 2023) ("[T]he CSRA provides the exclusive remedy for claims brought pursuant to the WPA [and] [u]nder the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit.") (citations omitted).[4] Accordingly, the Court properly considers documents which were (1) a part of Plaintiff's administrative record and incorporated by reference in the Second Amended Complaint, *see* EEO Complaint, Final Agency Decision, Notice of Right to File, and/or (2) were incorporated by reference in and integral to the Second Amended Complaint, *see* SAC ¶¶ 93, 119, 137, 150, 163, 176, 218, 228 (citing Letter of Removal, and basing several counts on the effect of that removal letter).

## II.    The Court Lacks Subject Matter Jurisdiction over Plaintiff's New York State Human Rights Law Claim

Plaintiff does not address in its opposition Defendants' argument that Plaintiff's two claims under NYSHRL—Count Two and Four— must be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction.  Def. Mem. at 10; Pl. Opp.  As Defendants correctly contend, "Title VII provides the sole remedy for federal employees alleging employment discrimination." *See, e.g.*, *Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998) (citing *Brown v. General Servs. Admin.*, 425 U.S. 820 (1976)); *Song v. Becerra*, No. 22 CIV. 9678 (JPC), 2022 WL 17618485, at *1 (S.D.N.Y. Dec. 13, 2022); Def. Mem. at 10.  As such, "[r]elief under the NYSHRL . . . is unavailable to persons asserting claims of discrimination and retaliation arising from federal

---

[4] As discussed below, Plaintiff's NYSHRL claims are dismissed because Title VII is the sole remedy for federal employees stating claims of employment discrimination. *See infra* at § II.

employment." *Williams v. Soc. Sec. Admin.*, No. 1:23-CV-2348 (LTS), 2023 WL 3728375, at *5 (S.D.N.Y. May 30, 2023); *see also Perkins v. United States Dep't of the Treasury*, No. 18-CV-08911 (NSR), 2022 WL 19772, at *16 (S.D.N.Y. Jan. 3, 2022) (dismissing a federal employee's NYSHRL claims for lack of subject matter jurisdiction); *McManamon v. Shinseki*, No. 11 CIV. 7610 PAE, 2013 WL 3466863, at *8 (S.D.N.Y. July 10, 2013) (dismissing NYSHRL claim "because [that] statute[] d[oes] not provide relief for a federal employee's claim against a federal agency.").

Therefore, Plaintiff's NYSHRL claims—Counts Two and Four—must be dismissed. Moreover, "[w]here a plaintiff fails to address the legal sufficiency of its claims in opposition to a motion to dismiss" as Dreyer has done here, "those claims are considered waived." *See Suarez v. Murray*, No. 20 CIV. 3514 (JCM), 2021 WL 1240518, at *12 (S.D.N.Y. Apr. 2, 2021) (citing *Fair Housing Justice Ctr., Inc. v. Cuomo*, 18-CV-3196 (VSB), 2019 WL 4805550, at *16 (S.D.N.Y. Sept. 30, 2019)); *see also Kurtz v. Hansell,* No. 20 CIV. 3401 (PAE), 2021 WL 1143619, at *16 (S.D.N.Y. Mar. 24, 2021) (holding that by failing to respond to argument on motion to dismiss "plaintiffs have abandoned that claim"); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442 TPG FM, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, . . . a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

### III.   The Federal Claims Against Defendants Other than Pamela Bondi Must Be Dismissed

Defendants argue that Plaintiff's claims against all defendants other than the United States Attorney General Pamela Bondi should be dismissed under Rule 12(b)(1) for lack of subject-matter

jurisdiction. Def. Mem. at 10–11.[5]  Plaintiff also does not address this argument in her opposition and accordingly waives her claims against all defendants except Attorney General Bondi.  *See* Pl. Opp.  Moreover, Defendants' arguments are correct on the merits: The proper defendant for such claims brought by a current or former federal employee is the head of the relevant agency. *See Gallo v. Herman*, 205 F.3d 1322 (2d Cir. 2000) ("Under 42 U.S.C. § 2000e-16(c), the head of the employing department is the only appropriate defendant in a Title VII action brought by federal employee."); *Soc. Sec. Admin.*, 2023 WL 3728375, at \*5 (citing 42 U.S.C. § 2000e-16(c) and citing *Torres v. United States Dep't of Veterans Affairs*, No. 02-CV-9601, 2004 WL 691237, at \*2 (S.D.N.Y. Mar. 31, 2004)) (finding the "proper defendant for [Title VII] claims brought by a current or former federal employee is the head of the relevant agency"); *Williams v. McCausland*, 791 F. Supp. 992, 998 (S.D.N.Y. 1992) (citing 5 U.S.C. § 7703(a)(2)) (finding the director of the "agency responsible for taking personnel action shall be respondent" in "mixed cases" brought by former federal employees bringing Title VII and CSRA claims).

The United States Attorney General is the proper defendant here because the DEA is a component of the DOJ. *See Villarruel v. Mukasey*, 266 F. App'x 473, 474 (7th Cir. 2008) (holding that the United State Attorney General is the "head of the agency" of the DEA and the "proper defendant" for a DEA employee's Title VII claim under 42 U.S.C. § 2000e–16(c)); *Kowal v. United States Dep't of Just.*, 107 F.4th 1018, 1026 (D.C. Cir. 2024) (describing the DEA as a "component" of the DOJ); *Kirton v. U.S. Dep't of Just.*, No. 16CV6539DLIRLM, 2018 WL 4636964, at \*3 (E.D.N.Y. Sept. 27, 2018) ("As a subdivision of the United States Department of Justice, the BOP's agency head is the Attorney General of the United States"); *see also Barbour*

---

[5] Defendants' caption and arguments refer to former Attorney General Merrick Garland.  However, as explained above, *see supra* 1 n.1, Attorney General Pamela Bondi is automatically substituted for former Attorney General Merrick B. Garland.

*v. Garland*, 105 F.4th 579, 581 (4th Cir. 2024) (potential DEA employee bringing a Title VII case against only the United States Attorney General); *Segar v. Mukasey*, 508 F.3d 16, 18 (D.C. Cir. 2007) (current DEA agents bringing a Title VII case against only the United States Attorney General).   Accordingly, Plaintiff's claims against the DOJ, the DEA, and Anne Milgram are dismissed.

### IV.    Plaintiff has Exhausted Administrative Remedies Regarding her Mixed Claims and Title VII Claims

### A.    CSRA/WPA Claims

"Under the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit." *Chinniah*, 62 F.4th at 702 (2d Cir. 2023) (quoting *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433    (D.C.    Cir.    1996)    and    citing *Kerr v. Jewell*, 836 F.3d 1048, 1058 (9th Cir. 2016) (explaining that the CSRA's administrative exhaustion requirement applies equally to WPA claims).   To present CSRA or WPA claims in federal court, plaintiffs either first must lodge complaints with the Office of Special Counsel ("OSC") or, in a mixed case, file a complaint either with the EEO or the MSPB.   *Chinniah*, 62 F.4th at 702–03 (citing *Kloeckner v. Solis*, 568 U.S. 41, 44, 133 S.Ct. 596, 184 L.Ed.2d 433 (2012)) ("WPA is part of the CSRA" and "the CSRA provides the exclusive remedy for claims brought pursuant to the WPA."); *Gilliard v. Gruenberg*, 302 F. Supp. 3d 257, 288 (D.D.C. 2018); *Sturgen v. Garland*, No. 8:22-CV-00049 (BKS/DJS), 2024 WL 4120439, at *4 (N.D.N.Y. Sept. 9, 2024). Defendant argues that Plaintiff failed to exhaust administrative remedies prior to filing her CSRA and WPA claims in court because she did not first file a complaint with the OSC and thus, pursuant to Rule 12(b)(1), the Court does not have jurisdiction to hear them.   Def. Mem. at 15–18.

A "mixed case" occurs "when an employee complains of a personnel action serious enough to appeal to the MSPB and alleges that the action was based on discrimination."   *Perry v. Merit*

*Sys. Prot. Bd.*, 582 U.S. 420, 424 (2017) (emphasis in original).  The actions that are "serious enough" that an employee may appeal to the MSPB are: "(1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough." *See Kloeckner*, 568 U.S. at 41 (quoting 5 U.S.C. § 7512).

The Second Amended Complaint does not allege that Plaintiff filed any OSC Complaint. *See* SAC.  Instead, Plaintiff argues that she properly brought a "mixed case" before the EEO.  *See* Pl. Opp. at 18; SAC ¶¶ 16, 77.  Defendant argues that Dreyer did not adequately exhaust her CSRA/WPA claims by bringing a mixed case in the EEO Complaint because she did not adequately state any CSRA/WPA claims in her EEO Complaint.  Def. Mem. at 17 (citing *Wilson v. U.S. Dep't of Transp.*, 759 F. Supp. 2d 55, 63 (D.D.C. 2011) (plaintiff failed to exhaust Section 2302 "prohibited personnel practice" claim where "[h]e did not allege any claims under the CSRA in his EEO complaints") and citing *Webster v. U.S. Dep't of Energy*, 267 F. Supp. 3d 246, 269 (D.D.C. 2017) (plaintiff failed to exhaust Section 2302 claim because her EEO Complaint "alleged discrimination, not whistleblower retaliation" and the agency's "EEO decision did not discuss any whistleblower issues")).

However, one of Plaintiff's four claims in her EEO proceeding, her indefinite suspension claim, was sufficiently "serious enough" to qualify as a mixed case since the suspension lasted more than fourteen days.  *See Kloeckner*, 568 U.S. at 45.  Thus, Dreyer was able to pursue her CSRA/WPA claims through the EEO to the extent they were based on the indefinite suspension. Plaintiff argues only that she exhausted her claims because she filed a mixed case with the EEO. Pl. Opp. 16–18.  Indeed, each of her CSRA/WPA claims appear to arise partly from her termination, *see* FAC ¶¶ 174, 181, 197, 200-01, 208, 214, 218, but several of the claims are also based on actions by the DEA that are insufficiently serious to amount to mixed claims—such as the revocation of her security clearance or her allegation that she was harassed, demeaned,

15

humiliated and bullied. SAC ¶¶ 176, 181, 218. Plaintiff makes no argument that these other allegations underlying her CSRA/WPA claims were in any way exhausted. As such, she has waived such arguments. *See, e.g.*, *Suarez*, 2021 WL 1240518, at \*12. In any case, as described below, Plaintiff's mixed case claims were not timely brought.

## B.    Title VII Claims

Prior to bringing claims under Title VII a federal government employee must timely exhaust the administrative remedies at her disposal. *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015) ("It is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court."); *Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir. 2008) (quoting *Belgrave v. Pena,* 254 F.3d 384, 386 (2d Cir. 2001)). The EEOC promulgated regulations establishing the applicable administrative procedures that a federal employee must exhaust prior to filing suit, including consulting with a counselor at the relevant agency's EEO and filing an EEO complaint. *Id.* at 74–75 (citing *Belgrave,* 254 F.3d at 386). Here, Plaintiff did file an EEO complaint, before she was terminated, based on her treatment during the OPR interview, the suspension of her security clearance, her indefinite suspension, and interference with her required drug testing. *See* Final Agency Decision at 2.

While the general rule is that a Title VII plaintiff may not pursue an unexhausted claim, a district court will consider all claims to the extent they are "reasonably related" to those that the plaintiff did assert in her EEO Complaint. *Id.* (citing *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir.2001), *cert. denied,* 536 U.S. 922 (2002)). Plaintiff argues that she did exhaust her remedies for claims based on termination because they are "reasonably related" to the complaints she raised in the EEO proceeding. A claim is "reasonably related" if "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Rosado v. Port Auth. of New York & New Jersey*, No. 22-587,

2024 WL 658776, at *2 (2d Cir. Feb. 16, 2024) (quoting *Deravin*, 335 F.3d at 200–01); *Mathirampuzha*, 548 F.3d at 78 (applying the "reasonably related" doctrine to an EEO proceeding; *Hodges v. Att'y Gen. of U.S.*, 976 F. Supp. 2d 480, 490 (S.D.N.Y. 2013) (same).[6]

In determining whether claims are reasonably related, courts focus on "the factual allegations made in the [EEO] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin*, 335 F.3d at 201. The central question is whether the complaint filed with the EEOC gave that agency "adequate notice to investigate discrimination on both bases." *See Ximines v. George Wingate High Sch.*, 516 F.3d 156, 158 (2d Cir. 2008). "Subsequent conduct is reasonably related to conduct in an [EEO] charge if: [1] the claim would fall within the reasonably expected scope of an [EEO] investigation of the charges of discrimination; [2] it alleges retaliation for filing the [EEO] charge; or [3] the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the [EEO] charge." *Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018) (quoting *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (internal quotation marks omitted)).

Plaintiff's termination claims are "reasonably related" to the original administrative proceeding under all these categories. With regard to the first category, Plaintiff's termination claims could be expected to fall within the scope of her indefinite suspension claim. Regarding the second category, Plaintiff files Title VII claims under the theory of retaliation alleging in part that she was terminated because she filed an EEO Complaint. SAC ¶¶ 165–66, 172. Regarding the third category, the termination effectively finalized the DEA decision to indefinitely suspend Dreyer without pay. SAC ¶¶ 71, 76, 93; Letter of Removal. Moreover, the DEA appears to have

---

[6] The Second Circuit "treat[s] the requirement that a federal employee bring a complaint to his or her EEO for resolution, . . . as analogous to the requirement that a private sector employee first bring a complaint to the attention of the [EEOC] for resolution." *Mathirampuzha*, 548 F.3d at 75 (quoting *Terry v. Ashcroft,* 336 F.3d 128, 150 (2d Cir.2003)). Accordingly, Courts in the apply the "reasonably related" doctrine to EEO and EEOC complaints.

suspended Dreyer and terminated her for the same purported reasons, namely her conduct during the Cartagena trip.  SAC ¶¶ 72, 93; *see Wagner v. Inter-Con Sec. Sys., Inc.*, 278 F. Supp. 3d 728, 735 (S.D.N.Y. 2017) (finding a termination was "reasonably related" to an EEOC Complaint premised on an earlier suspension where the "suspension and termination were the result of precisely the same issue— plaintiff's failure to submit additional medical documentation related to his diabetic condition.").  Accordingly, Plaintiff's Title VII termination claims here were reasonably related to the EEO proceeding below and thus Plaintiff has satisfied the requirement to exhaust her administrative remedies with regard to those claims.

## V.    Plaintiff Failed to Timely File a Mixed Case

Defendants assert that Plaintiff's "termination-based claims" are time-barred and thus should be dismissed under Rule 12(b)(6).  They further argue that Plaintiff's federal claims in this case all are premised on the termination of her DEA employment, an issue which was appealable to the MSPB, triggering a thirty-day deadline to file this lawsuit from the date of the Final Agency Decision. Def. Mem. at 11–12.  Plaintiff argues that here, because she did not elect to appeal to MSPB after receiving the Final Agency Decision, her claims were subject to a ninety-day deadline, rather than a thirty-day deadline. Pl. Opp. at 7–8.

Defendants and Plaintiff both acknowledge however, that Plaintiff did not raise her final termination as an allegation in her EEO proceeding. Def. Mem. at 14 (citing Final Agency Decision); Pl. Opp. at 11.  Instead, Plaintiff raised only her "indefinite suspension without pay," which was put in place prior to her termination, and other complaints. *See* SAC 13–14, 93; Final Agency Decision. at 2. Defendants argue that the Court should either (1) consider Plaintiff's EEO claim regarding her indefinite suspension and her current claims regarding termination one in the same and consider them untimely or (2) in the alternative, find that Plaintiff failed to exhaust her administrative remedies regarding her current termination claims because she did not raise it

specifically in the EEO proceeding. Def. Mem. at 11–14.  As explained above, Plaintiff's termination claims were exhausted because they are "reasonably related" to her mixed case indefinite suspension claims.  However, her mixed case claims were not timely brought.

Defendants argue that Plaintiff was required to file this lawsuit within thirty days of the DEA's Final Agency Decision on her EEO Complaint because Dreyer brought a "mixed case." Def. Mem. at 11–12.  After filing a mixed case with the EEO and receiving a final decision from the employing agency, a complainant dissatisfied with the outcome may either (a) appeal the mixed case to the MSPB within thirty days or (b) file a civil action within thirty days. *See* 29 C.F.R. § 1614.302(d) (citing § 1614.310(a)); *Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999); *Ezeh v. VA Med. Ctr., Canandaigua, NY*, No. 13-CV-06563 EAW, 2014 WL 4897905, at *16 (W.D.N.Y. Sept. 29, 2014) (citing *Slingland v. Donahoe*, 542 F. App'x 189, 192 (3d Cir.2013) and citing Bonds v. Leavitt, 629 F.3d 369, 378 (4th Cir.2011)); *Ezeh v. McDonald*, No. 13-CV-6563 EAW, 2015 WL 260714, at *8 (W.D.N.Y. Jan. 21, 2015); *Taylor v. Mabus*, 685 F. Supp. 2d 94, 97–98 (D.D.C. 2010) (citing 29 C.F.R. §§ 1614.302(d)(1)(ii), 1614.310(a)) ("If he or she selects the agency EEO route [for exhaustion of a "mixed case complaint"], the aggrieved party has 30 days from the EEO's final decision to file an appeal with the MSPB or a civil discrimination action in federal district court."); *see also Downey v. Runyon*, 160 F.3d 139, 142 (2d Cir. 1998) (citing C.F.R. § 1614.302(d)(3) as the subsection governing challenges to final EEO determinations of mixed cases).

As the relevant statute explains, "at the time that the agency issues its final decision on a mixed case complaint, the agency shall advise the complainant . . . of the right to file a civil action as provided at § 1614.310(a)." 29 C.F.R. § 1614.302. Section 1614.310(a) requires mixed case complainants to file a civil action "[w]ithin 30 days of receipt of a final decision issued by an agency[.]" *See* § 1614.310(a).

In a non-mixed case, however, a complainant is dissatisfied with the final agency decision she may file a civil action within ninety days of the decision. See *VA Med. Ctr.*, 2014 WL 4897905, at *16 (citing 29 C.F.R. § 1614.310 and 29 C.F.R. § 1614 .407(a)) ("The 30 day deadline applies only to Plaintiff's mixed case complaint based on his discharge. See 29 C.F.R. § 1614.310. The deadline to file a district court action for his non-mixed case complaints was 90 days. See 29 C.F.R. § 1614 .407(a)."). As noted, Plaintiff contends that all of her claims are subject to a ninety-day deadline for filing suit. *See* Pl. Opp. at 7–10 (citing the subsection relevant to non-mixed claims, 29 C.F.R. § 1614 .407(a)).

In fact, the Notice of Right to File that Plaintiff received, along with the Final Agency Decision, informed Plaintiff that regarding her mixed claim based on her "indefinite suspension" or "constructive discharge" claim, she had either thirty days to file an appeal to MSPB or thirty days to file a civil suit. Notice of Right to File at 1–2 (citing 29 C.F.R. § 1614.310(a)) ("You also have the right to file a civil action on your constructive discharge claim in the appropriate United States District Court within thirty days of the date you receive this decision, unless you filed an appeal with the MSPB."). It later stated that "[a]s to all other claims in [Dreyer's] complaint," specifically "claims one, two and four"—premised on her treatment during an interview, the suspension of her security clearance and the DEA's alleged attempts to prevent her from taking a drug test—Dreyer may appeal the agency's decision by filing a civil action in federal court within ninety days of the receipt of the Final Agency Decision. *Id.* at 2–3.

Plaintiff argues that the ninety-day deadline referenced in the Notice of Right to File applies to her entire case. SAC ¶¶ 19–20. Pl. Opp. at 7–8. In support of her position, Plaintiff misleadingly cites to a one-page excerpt of the Notice of Right to File that Plaintiff entered on the docket, which includes only the ninety-day deadline for the "remaining claims" and makes no mention of the thirty-day deadline detailed earlier in the Notice of Right to File. *Compare* SAC ¶¶

8, 19 (citing [ECF No. 33–2]) *with* Notice of Right to File at 1–2.  Plaintiff also argues that, because she did not elect to appeal to MSPB after receiving the Final Agency Decision, the thirty-day time limit does not apply to her mixed case. Pl. Opp. at 7–8. Plaintiff cites no law to support this position. For the thirty-day time limit to apply, the EEO Complaint must have been a mixed case, defined as "serious enough" to be *appealable* to MSPB, it need not be in fact, appealed to the MSPB. *See Perry*, 582 U.S. at 424. Nevertheless, Plaintiff concedes and indeed regularly affirmatively asserts that she did in fact bring a mixed case, SAC ¶¶ 13, 77, 86, 94; Pl. Opp. at 4, 7, 8, 9, 18, which would trigger the thirty-day deadline.

Plaintiff received the Final Agency Decision on September 8, 2023, *see* SAC ¶ 95, and filed this civil suit forty-seven days later, on October 25, 2023, *see* SAC ¶ 97. Plaintiff has thus failed to timely file her wrongful suspension, and reasonably related wrongful termination, mixed case claims within thirty days and those claims must be dismissed.  Each of Plaintiffs' federal claims is premised at least in part on her termination.  *See* SAC ¶¶ 119, 150, 172, 174, 181, 197, 203, 209, 214, 218, 227.

The Court need not address "claims one, two and four" of the EEO Complaint for which the Notice of Right to File stated Plaintiff had ninety days to file a civil suit.  Notice of Right to File at 2–3.  Though the filing of this suit was within the ninety-day deadline provided for these non-mixed claims, Plaintiff makes no argument in the alternative regarding the deadline for her non-mixed claims.  Instead, she asserts only that the present case is a mixed case. SAC ¶¶ 13, 77, 86, 94; Pl. Opp. at 4, 7, 8, 9, 18.  Though parts of Plaintiff's Title VII claims here are based on the DEA conduct described in "claims one, two and four," *see* SAC ¶¶ 119, 150, 168, 221, 228, Plaintiff asserts no argument and proffers no caselaw to suggest that, here, where Plaintiff's Title VII causes of actions appear to rely on both her underlying untimely mixed case claims and timely non-mixed case claims, that the Court may parse through her present counts, considering only the

facts underlying her timely filed non-mixed case claims. As such, Plaintiff has waived any argument to that affect supporting the timeliness of her non-mixed claims. *See, e.g.*, *Suarez*, 2021 WL 1240518, at *12.

## **CONCLUSION**

For the foregoing reasons, the motion to dismiss is GRANTED, the case is dismissed with prejudice.  The Clerk of Court is respectfully requested to terminate the motions at 42 and 50 and close this case.

**SO ORDERED.**

**Date:  March 24, 2025**
       **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**